## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| ELVANO GALLI | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 04CV11544JLT |
| | ) | |
| F/V BARBARA ANN (O.N. 699442) | ) | |
| her engines, boilers, tackle, | ) | |
| fishing permits and appurtenances, | ) | |
| *in rem* | ) | |
| | ) | |
| and Louis Pasquale, *in personam*, | ) | |
| Defendant. | ) | |

## PLAINTIFF'S OPPOSITION TO DEFENDANT, LOUIS PASQUALE'S MOTION FOR EXTENSION OF TIME TO APRIL 20, 2005 TO ANSWER

Now comes the Plaintiff, by his attorneys, to oppose Louis Pasquale's motion for an extension of time to April 20, 2005 to Answer the Plaintiff's Complaint.  The Defendant's motion must be denied as the Defendant has already been afforded ample time to answer the complaint in this matter prior to being incarcerated and more importantly, the Defendant's motion is misleading in that prior to being incarcerated, he was living aboard his other commercial fishing boat, F/V SPRAY[1].  Alternatively, if it is allowed, it should only be for Mr. Pasquale to file an answer as to the *in personam* claim.

## I.     DEFENDANT HAS ANOTHER FISHING BOAT THAT HE LIVES ABOARD AND CAN UTILIZE TO FISH.

The Defendant was a commercial fisherman operating two commercial fishing vessels, F/V BARBARA ANN[2] and the F/V SPRAY.  Elvano Galli relying on security of the vessels,

---

[1] The documented owner of the F/V SPRAY is F/V Spray, Inc.  Mr. Pasquale is the sole owner and operator of F/V Spay, Inc.  Mr. Pasquale purchased the corporation a couple of years ago but has taken no steps to memorialize his control over the corporation with the Massachusetts Secretary of State's Office.  Yet as discussed below he has executed documents in the capacity of President of the corporation.

[2] It should be noted that during the recent blizzard the F/V BARBARA ANN sank at the dock while in the custody of the substitute custodian.  The substitute custodian was able to raise the vessel and get the engine running.  The substitute custodian's insurance company has been placed on notice and was actively involved with the salvage

their fishing permits and history along with other appurtenances and her owners, loaned money to the Pasquale for necessaries to these vessels for which he claims a maritime lien in the amount $85,000.00.  In May of 2004, Mr. Pasquale sold the fishing history and permits that belonged to the F/V SPRAY for approximately $130,000.00.  Mr. Pasquale was arrested on May 26, 2004 and remained out on bail until December 23, 2004.  See Exhibit B to Docket Number 14.

At the time the F/V SPRAY's permits were sold, she was berthed at the Gloucester Maritime Heritage Center's (GHMC) facility in Gloucester, Massachusetts.  GHMC made repeated attempts to have the vessel removed.  Mr. Pasquale was non-responsive and failed to take any steps to reimburse GHMC for any outstanding wharfage.  As a result, GHMC filed an action against F/V SPRAY, *in rem*, to have her removed from GHMC's facility and attempt to collect outstanding balance owed for wharfage.

After the suit was filed, numerous attempts were made to work out an arrangement with Mr. Pasquale to avoid having to arrest the vessel.  The attempts failed and the F/V SPRAY was arrested by the U.S. Marshal on September 27, 2004.  See *Gloucester Maritime Heritage Center, Inc. v. F/V SPRAY (O.N. 273544)*, Civil Action No.: 1:04-CV-11070-RCL.  A default was entered against the vessel and motion was made to sell the F/V SPRAY at auction.

On November 15, 2004, the F/V BARBARA ANN was arrested by the U.S. Marshal.  At the time of the arrest, Mr. Pasquale was served **in hand** with a copy of the Plaintiff's Verified Complaint.  See Docket Entry Number 10 and 11.  On December 3, 2004, GHMC and Mr. Pasquale entered an Agreement for Judgment that would allow for the release of the F/V SPRAY into Mr. Pasquale's custody.  See *Gloucester Maritime Heritage Center, Inc. v. F/V SPRAY (O.N. 273544)*, Civil Action No.: 1:04-CV-11070-RCL.  Mr. Pasquale then moved aboard the

---

operations.  The U.S. Marshal was given notice of the sinking immediately after it was discovered by undersigned counsel on January 24, 2005.

F/V SPRAY.  Mr. Pasquale clearly did not live aboard the F/V BARBARA ANN for the period

of time between November 15, 2004 and December 23, 2004 when he was found guilty of

possession of heroin and other substances.

The problem with Mr. Pasquale's motion is that he failed to tell the Court that he owns

the F/V SPRAY and that he can obtain the same federal fishing permits that are on board the F/V

BARBARA ANN for the F/V SPRAY whenever he is released from jail.  Additionally, the F/V

SPRAY has a state limited access fishing permit that will also allow him to commercially fish.

Contrary to Mr. Pasquale assertions, when he is released from prison, he may resume his fishing

ventures by utilizing the F/V SPRAY and may continue to live aboard her.

## II.    PLAINTIFF SOUGHT A DEFAULT AGAINST BOTH LOUIS PASQUALE AND F/V BARBARA ANN.

The Plaintiff filed for a default against Louis Pasquale and F/V BARBARA ANN

pursuant to Rule 55(a) of the Federal Rules of Civil Procedure not only after having served Mr.

Pasquale in hand but also after having published the notice of the arrest in the Boston Herald on

December 10, 2004.  See Docket Entry 13.  The time for him to respond under the Federal Rules

of Civil Procedure was within 20 days of the service of the complaint.  Alternatively under Rule

C(6)(b)(i)(A) of the Supplemental Rules of Civil Procedure, he was supposed to assert a right of

ownership interest in the vessel within 10 days of its arrest.  He clearly knew when the vessel

was arrested and chose to do nothing about the arrest.  The Plaintiff took the additional required

step of advertising the arrest of the vessel as required under Rule C(4) even though the record

owner had been personally served.  The notice was published on December 10, 2004 and again

the Defendant failed to respond to that notice within the time prescribed.

The clerk has authority to enter default against a party who "has failed to plead or

otherwise defend" in accordance with the Federal Rules of Civil Procedure.  Fed.R.Civ.P. 55(a).

However, the Court may later set aside the entry of default "for good cause shown." Fed.R.Civ.P. 55(c). The First Circuit has identified seven factors that are relevant to whether good cause exists to set the default that should be applied to the Defendant's motion for an extension off time: (1) whether the default was willful, (2) whether setting it aside would prejudice the adversary, (3) whether the defaulting party presents a meritorious defense, (4) the explanation for the default, (5) the good faith of the parties, (6) the amount of money involved, and (7) the timing of the motion.  *Coon v. Grenier,* 867 F.2d 73, 76 (1st. Cir. 1989).  There is no rigid formula for applying these factors. See  *Leshore v. County of Worcester*, 945 F.2d 471, 472 (1st Cir. 1991).  However, it is a basic tenet of federal civil procedure that "actions should ordinarily be resolved on their merits."  *Coon*, 867 F.2d at 76. Especially when the motion to set aside default arises early in the case, the Court must "resolve doubts in favor of a party seeking relief from the entry of default."  Id.

Courts tend to view a default as "willful" where it shows contempt for the court's procedures or an effort to evade the court's authority. See, e.g., *Coon*, 867 F.2d at 76 (declining to find default willful where there was no evidence that defendant purposely tried to conceal his whereabouts or evade service); *Snyder,* 836 F.Supp. at 29 (noting that although defendants delayed proceedings, they remained in contact with the court, which "militated against categorizing their conduct as 'willful'").  In this instance, Mr. Pasquale has willfully chosen not to answer the Verified Complaint after being served **in hand** and after publication.  He had plenty of time to hire an attorney to deal with this issue, but he failed to do so.  This is just an attempt by the Defendant to delay.

Even where there is good cause for a party's default, the Court will not set an entry of default aside unless it appears that the defaulting party might prevail if the case were allowed to

proceed -- that is, unless the defaulting party has advanced a potentially meritorious defense. *Bus. Credit Leasing, Inc. v. City of Biddeford*, 770 F.Supp. 31, 35 (D.Me. 1991), aff'd 978 F.2d 767 (1st Cir. 1992). "[A] party's averments need only plausibly suggest the existence of facts which, if proven at trial, would constitute a cognizable defense." *Coon*, 867 F.2d at 77.  Mr. Pasquale has not asserted a meritorious defense in his motion.  The simple fact of the matter is that there he has no meritorious defense.  His excuse for an extension is simply to hire an attorney, something he should have done on November 16, 2004 or soon thereafter but certainly not on April 20, 2005.

Delay alone does not constitute prejudice, absent some further disadvantage such as the death of a witness or unavailability of evidence. See *Coon*, 867 F.2d at 77.  In this instance, we do not know for sure whether Mr. Pasquale will even be released from jail on April 19, 2005. Additionally, the delay continues to hinder the Plaintiff in that the BARBARA ANN continues to accrue substitute custodial costs that will be come out of the eventual sale of the vessel.  Even if the Defendant's motion is allowed, the Plaintiff will be seeking to have the vessel sold before Mr. Pasquale is even released from jail.  Currently the boat has accrued over $4,350.00 in storage costs and an estimated $800.00 in towage costs and another $2,475.00 in estimated labor to maintain the vessel.  The boat will accrue another $3,450.00 in additional storage costs and another $1,725.00 in estimated labor by April 20, 2005.  Finally, the U.S. Marshal's bill for its services and publications will probably be in the neighborhood of $1,750.00.  The total cost of the arrest that will come out of the proceeds of the sale of the vessel or will have to be paid by the Defendant will be approximately $14,550.00 by April 20, 2005.  In essence, the delay devalue the asset, F/V BARBARA ANN, with each passing day.

Plaintiff moved for default by motion dated January 11, 2005, and served Defendant with its motion via regular mail that day.  Plaintiff could not have moved for a default as to the vessel until the U.S. Marshal's had processed the return of service on the publication of the Notice of Arrest.  See Rule C of the Supplemental Admiralty Rules. The Court has not yet entered a default. Defendant moved to have the default vacated by a letter dated January 18, 2005 that was not docketed until February 8, 2005. The speed at which the Defendant moved to lift the entry of default both suggested that the default was willful, see *Snyder*, 836 F.Supp. at 29,  and only further delays the inevitable in that the Defendant does not have a meritorious defense and further that he had plenty of time before he was incarcerated to retain an attorney to defend himself in this case.

### III.    THE DEFENDANT CANNOT BE ALLOWED LEAVE TO FILE AN ANSWER LATE ON BEHALF OF THE F/V BARBARA ANN.

The Defendant has had ample opportunity to defend against the arrest of the F/V BARBARA ANN.  He took no steps to reserve his rights to the vessel before going to jail.  The vessel continues to accrue additional charges that can only be mitigated through a judicial sale and the payment of the monies into Court for further determination.  Mr. Pasquale does not have sufficient money to post a bond for the release of the vessel.  The longer this vessel continues to sit in custody the more expenses will accrue and make it less probable that anyone other than the substitute custodian and the U.S. Marshal will get paid.  The Plaintiff intends to file for an immediate default judgment along with a motion for the sale of the vessel after the Rule 55(a) default is entered.  Even if the Rule 55(a) default is not entered, the Plaintiff will be forced to move for an interlocutory sale of said vessel in order to preserve the value of the asset.

WHEREFORE, the Plaintiff respectfully requests that this Honorable Court deny the Defendant's motion for an extension of time to April 20, 2005 to Answer the complaint.  In the

alternative, the F/V BARBARA ANN must be defaulted and the Defendant be only allowed to

answer for the *in personam* claims or the Defendant should only be given 10 additional days to

answer the complaint from the date of the allowance of the motion.

Respectfully submitted,
**Elvano Galli**
**B**y its attorney

/s/ David S. Smith

_____
David S. Smith, Esquire
BBO No.: 634865
Cianciulli and Ouellette
163 Cabot Street
Beverly, MA 01915
Tel:  (978) 922-9933

## CERTIFICATE OF SERVICE

I, David S. Smith, attorney for the proposed intervening defendant, hereby certifies that I caused to have served a copy of the foregoing document by regular mail postage prepaid to upon Louis Pasquale, care of the Essex County Correctional Facility & Sheriff's Headquarters P.O. Box 807 Middleton, Massachusetts 01949-2807 this 10th day of February, 2005.

/s/ David S. Smith

_____
David S. Smith